STATE of Minnesota, Respondent,

v.

James Roy HODGES, Appellant.

No. 49809.

Supreme Court of Minnesota.

Nov. 23, 1979.

Rehearing Denied Jan. 11, 1980.

Meshbesher, Singer & Spence and Ronald I. Meshbesher, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Robert W. Johnson, County Atty., and Richard A. Trachy, Asst. County Atty., Anoka, for respondent.

OTIS, Justice.

Defendant, after waiving his right to a jury trial and submitting the question of his guilt to the court on stipulated facts, was found guilty by the trial court of intentionally concealing nine stolen Ford pickup trucks and was sentenced to a maximum prison term of ten years. The sole issue raised by defendant on this appeal from judgment of conviction is whether the trial court, at the omnibus hearing, erred in denying defendant's motion to suppress evidence on Fourth Amendment grounds. We hold that the trial court correctly denied the motion to suppress, and we therefore affirm.

David Super, d.b.a. as Supertrux, Inc., had rented, for commercial use, a separate enclosed portion of a warehouse building located in Blaine. Late in 1977 Super placed an ad in local newspapers seeking a sublessee for the premises, and defendant, claiming to be in business as Hodges Seafood Transport Company, responded and agreed to rent the premises for three months from Super at a rental of $615 per month. Defendant paid the first month's rent the same day. Under the terms of the written agreement, Super retained a key and specifically retained the right to enter the premises at any reasonable time to view the premises, to make repairs, or to show them to other prospective tenants.

On February 9, 1978, Super learned that the check he had received from defendant for the January rent, drawn on a Mississippi bank, was worthless. Super had no knowledge of where defendant was residing. He went to the premises intending to inform defendant of the bad check and to obtain payment of the February rent. Since defendant was not present, Super used his key to enter the premises, as he had periodically done, and there saw a large number of pickup trucks in various stages of dismantlement.

Super, after recording a license plate number, went to the Blaine Police Department hoping to have the receptionist run a license check for him to help locate defendant. She referred him to Sergeant Jack Sunnarborg and Detective Ronald Stenstrom. Super described to them what he had seen and asked them to accompany him to the premises. They agreed.

Upon arriving at the premises Super opened the door with his key and let the officers in. Inside they saw what Super had seen earlier. After remaining a short time in order to record some license plate and serial numbers, the officers returned to their car and checked the numbers by police radio. They confirmed immediately that several of the vehicles had been reported as stolen. When defendant drove up in another pickup truck, Super identified him and the officers arrested him.

A police officer then was posted outside the premises while the officers drafted an application for a search warrant which was obtained and executed.

■ Defendant in his brief argues that since Super had no authority to consent to the initial warrantless police entry the search violated the Fourth Amendment. The state in its brief argues that the warrantless entry and temporary seizure of the items for purposes of recording serial numbers did not offend any legitimate expectation of privacy and was valid. We hold that third-party consent did not justify the initial warrantless entry by the police. However, under the circumstances here present the exclusionary rule did not require suppression of the evidence seized.

■ Professor LaFave in his recently published treatise states the general rule to be that a lessor cannot give consent to a warrantless police search of the premises occupied by his tenant, and that "The rule is not otherwise merely because the lessor has by express agreement or by implication reserved the right to enter for some special and limited purpose." 2 W. LaFave, Search and Seizure, § 8.5(a) at 739 (1978). An exception occurs if the tenant has abandoned his interest in the premises or the lease has terminated by means other than abandonment. As stated by Professor LaFave:

> Here the courts are inclined to distinguish between those situations where a transient is staying in a hotel or motel and those where a person has rented an apartment or home on a more permanent basis. Termination of the rental period for Fourth Amendment purposes is more readily found in the former type of case.

*Id.* at 742 (footnote omitted). *See also* 2 W. LaFave, Search and Seizure, §§ 2.3(a), 2.4(b) (1978). This case does not fit within the termination exception. The fact that we are dealing with commercial property is immaterial in view of the United States Supreme Court's recent decision in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the so-called "OSHA warrantless inspection" case. There the court applied the Fourth Amendment to commercial buildings in ruling that OSHA is unconstitutional insofar as it purports to authorize warrantless inspections of business premises.

■ While a property owner can, by his conduct, demonstrate that he does not have a reasonable expectation of privacy in his property—*see Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *State v. Tungland,* 281 N.W.2d 646 (Minn. 1979)—defendant's failure to pay his rent on time, without more, is not enough. The remedy of suppression is not required, however, where, as here, the police had an independent source of information which

existed and was known before the police went to defendant's premises. That information was provided by Super, a private citizen whose entry and observations were not governed by Fourth Amendment requirements. *Burdeau v. McDowell,* 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921) (Fourth Amendment limits the government only and evidence obtained by private illegal search need not be suppressed); 1 W. LaFave, Search and Seizure, § 1.6 (1978). In our opinion the information which the police obtained from Super gave them probable cause to believe that defendant was in the business of receiving stolen property.[1] While they could have summarized what he told them in a little greater detail in the warrant affidavit,[2] we believe that the information, by itself and without the information the police had obtained pursuant to their warrantless entry, would have justified the issuance of the warrant. We find support for this conclusion in *James v. United States,* 135 U.S.App.D.C. 314, 418 F.2d 1150 (D.C. Cir. 1969), where the court held that if lawfully obtained information establishes probable cause and, by itself and apart from any tainted information, would have justified issuance of the search warrant, the evidence seized pursuant to the warrant is admitted.[3]

Affirmed.

1. The nature of the property and circumstances surrounding the possession of the property bear on the determination of probable cause to believe that the property in question is stolen property. See, e. g., *State v. Lee,* 302 Minn. 382, 225 N.W.2d 14 (1975), discussed favorably in 1 W. LaFave, Search and Seizure, § 3.6(a) at 645 (1978). Here the police knew and stated in the affidavit that the sublessee claimed to be doing business as a seafood transport company but that inside the premises the lessor, a presumably reliable private citizen informer, had personally observed that day a large number of dismantled pickup trucks. They also knew and stated that the sublessee had paid for the rent with a bad check drawn on a Mississippi bank. Under the circumstances, we think that the information gave them probable cause to believe that the premises were being used in the business of receiving stolen pickup trucks, since those who are in the business of receiving stolen motor vehicles often pose as operators of a legitimate business and rent for short periods of time warehouse-type property or garages which they then use in dismantling the vehicles.

2. Presumably they would have summarized this information in greater detail if they had not relied on their own observations.

3. For a recent case applying the *James* rule, see *United States v. DiMuro,* 540 F.2d 503 (1st Cir. 1976). Arguably the so-called "inevitable discovery" rule—discussed at 3 W. LaFave, Search and Seizure, § 11.4(a) (1978)—also supports the admission of the evidence.