**STATE of Minnesota, Respondent,**

v.

**Larry LOZAR, Appellant (C5–89–2144),**

**Eloise Rae Lozar, Appellant (C0–89–2200).**

**Nos. C5–89–2144, C0–89–2200.**

Court of Appeals of Minnesota.

July 31, 1990.

Review Denied Sept. 28, 1990.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Bruce L. Anderson, Lake County Atty., Two Harbors, for State of Minn.

Steven J. Meshbesher, Andrew S. Birrell, Meshbesher, Birrell & Dunlap, Minneapolis, for Larry Lozar.

Allan H. Caplan, Harlan M. Goulett, Allan H. Caplan & Associates, Minneapolis, for Eloise Rae Lozar.

Considered and decided by LANSING, P.J., and FORSBERG and SCHULTZ *, JJ.

## OPINION

HAROLD W. SCHULTZ, Judge.

Appellants Larry and Eloise Rae Lozar were jointly charged in Lake County District Court with possession of marijuana with intent to sell or distribute, and possession of marijuana by a dealer without affixing state tax stamps. The charges against the Lozars arose following the seizure, pursuant to warrant, of approximately 750 pounds of marijuana from their greenhouse, garage and residence. Following an omnibus hearing, the trial court refused to suppress the evidence. The Lozars have sought review of the trial court's pretrial order by pleading not guilty, waiving the jury trial and appealing from their convictions. *See State v. Johnson*, 422 N.W.2d 14, 16 (Minn.App.1988), *pet. for rev. denied* (Minn. May 16, 1988). The Lozars' appeals have been consolidated. We affirm.

## FACTS

On July 13, 1988, agent Dennis Bauers of the Arrowhead Drug Task Force received information from an acquaintance regarding a marijuana growing operation in a greenhouse outside of Ely near White Iron Lake. The informant told Bauers that the greenhouse was located within walking distance of the Silver Rapids Lodge just inside of Lake County. The informant also told Bauers about conversations he had with an

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

individual named Larry who grew the marijuana; that Larry's home was located on a lake; that he owned an expensive ski boat; that the greenhouse had a "No Trespassing" sign on it and its door was secured with a padlock; and that a cable hung across the driveway to the greenhouse.

On July 27, 1988, Bauers followed up on this information and, accompanied by Agent Gielen, went to the general area described by the informant. After making inquiries and observing an expensive ski boat, they located the name "Larry Lozar" on a home near the Silver Rapids Lodge. The agents observed a greenhouse approximately 150 yards south of the nearest public road and a cable across the driveway leading to the greenhouse which contained a "No Trespassing" sign.

Agents Bauers and Gielen returned to the Lozar property during the early morning hours of August 5, 1988. After entering the Lozars' property, Bauers smelled an "obvious and strong" odor of marijuana emanating from the greenhouse itself. The greenhouse structure was covered with several layers of opaque plastic which prevented the agents from viewing its interior. The greenhouse had no windows or vents which would allow a view of its interior.

At one end of the greenhouse was a padlocked "bi-fold" door secured by a 2 × 4 wooden stake. The agents pulled the stake away, pulled back one corner of the door and observed marijuana plants growing inside.

Based on the information obtained from the confidential informant and as a result of Bauers' perceptions during his entry of the property on August 5, Douglas Partyka, supervisor of the Arrowhead Drug Task Force, applied for and obtained a warrant from the St. Louis County District Court. The warrant was executed in the early morning hours of August 6, 1988, by members of the task force with assistance of other officers.

In the greenhouse, officers found 131 marijuana plants, each from five to eight feet tall, in individual pots. Several large bags of marijuana were found in the garage and basement of the residence, as well as in a refrigerator located in the kitchen. Additionally, a scale appropriate for weighing marijuana and numerous plastic bags appropriate for packaging the substance were discovered. At the request of the agents, Eloise Lozar opened a safe located in the garage of the residence from which the officers recovered $5,100 in cash.

Larry, who was interviewed by a police official immediately following the search, confirmed that over 130 marijuana plants were growing in the greenhouse. When asked if anyone else was involved in the growing operation, he said no, and indicated that his wife was aware of the operation, but was not involved. When Larry was asked for the combination to the safe, however, he related that Eloise had the combination, and stated, "my wife is the money department person."

Bauers testified at the omnibus hearing that his informant had never given him information about drug activity and that the police had not conducted a record check on him. Bauers was cross-examined with regard to peering inside the greenhouse door. When asked whether it was only after looking inside the greenhouse that he thought he had enough information to obtain a warrant, Bauers replied that such was not the case.

## ISSUES

1. Did the trial court err by refusing to suppress marijuana and the related evidence seized in the search of the Lozars' property pursuant to the warrant?

2. Was the evidence produced at trial sufficient as a matter of law to support the trial court's verdict finding Eloise Lozar guilty of possession of marijuana with intent to distribute, and possession of marijuana as a dealer without affixing the state tax stamps?

## ANALYSIS

### 1. *Invalid Warrant*

The Lozars argue that the trial court erred by refusing to suppress marijuana

and related evidence seized pursuant to a search warrant. The Lozars maintain the initial warrantless entry of their property and observation of marijuana plants in their greenhouse by narcotics agents invalidated the warrant pursuant to which the evidence was seized. They also contend the affidavit accompanying the application for a search warrant was insufficient to establish probable cause because the veracity of the confidential informant and the basis for the informant's knowledge were not shown, and because the affidavit contained deliberate or reckless misrepresentations of fact.

### Illegal Search

The exclusionary rule prohibits introduction of evidence seized during an unlawful search, including derivative evidence that is the product of evidence acquired as an indirect result of the unlawful search. *Wong Sun v. United States,* 371 U.S. 471, 484–85, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963); *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 267–68, 84 L.Ed. 307 (1939).

In this case, the exclusionary rule must be viewed in concert with the "independent source" doctrine which the United States Supreme Court described in *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

> [T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse* position, that they would have been in if no police error or misconduct had occurred. * * * When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.

*Id.* at 443, 104 S.Ct. at 2509. Here, the state does not dispute that the opening of the greenhouse door by the officers, without first obtaining a search warrant, violated the Fourth Amendment. The state contends, however, that the evidence subsequently seized pursuant to a warrant was

admissible against constitutional challenge because the warrant was supported by probable cause of an independent source.

In *Murray v. United States,* 487 U.S. 533, 535, 108 S.Ct. 2529, 2531–32, 101 L.Ed.2d 472 (1988), the United States Supreme Court considered the issue of whether to suppress evidence of drugs seized from a warehouse by federal agents pursuant to a search warrant. The agents had made an earlier unlawful search of the warehouse and did not reveal to the magistrate issuing the search warrant that the unlawful search had been made. The Court stated:

> The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. *This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.*

*Id.* at 542, 108 S.Ct. at 2535–36 (emphasis added).

In this case, the trial court analyzed the issue in accordance with dictates set forth in *Murray.* The trial court indicated

> [t]here is no evidence to show, that their motivations were improper, that their decision reflected a lack of faith in the information that they had, nor that it was in some sense necessary to confirm that there was marijuana in the greenhouse.

The trial court further determined that there was no basis to indicate the magistrate's decision to issue the warrant was affected by his knowledge of the illegal search and its results. The trial court stated:

> To suggest that once he read the confirmatory disclosure that he would abandon common sense and cave in to public pressure to join the war on drugs at all cost to the rights of the individual is an insult, not only to him but to all the Judges of this State. * * * [T]here is absolutely no

evidence that it affected the actions of [the magistrate] in issuing the warrant.

This court must review, as a matter of law, the trial court's determination that the officers would have sought to obtain a warrant regardless of their illegal observation of the marijuana plants in the Lozars' greenhouse and the trial court's determination that the magistrate issuing the search warrant was not *affected* by his knowledge of the illegal search and its results. *See State v. Storvick*, 428 N.W.2d 55, 58 n. 1 (Minn.1988).

■ The Lozars contend that if the police conducted an illegal search to "make sure" the marijuana was present before they obtained the warrant, the evidence seized pursuant to the warrant must be suppressed without further inquiry. Such a true "confirmatory" search would require suppression of the latter obtained evidence. *See Murray*, 487 U.S. at 540, 108 S.Ct. at 2534–35; 4 W. LaFave, Search and Seizure, § 11.4, at 37 (2d ed. Supp.1990).

The Supreme Court stated in *Murray:*
To determine whether the warrant was independent of the illegal entry, one must ask whether it would have been sought even if what actually happened had not occurred * * *.
*Id.*, 487 U.S. at 542 n. 3, 108 S.Ct. at 2535 n. 3.

We are hesitant to speculate as to whether the agents would have obtained a search warrant had they not viewed the marijuana. Bauers' testimony is that they would have. However, because sufficient probable cause was present without the agents' observation, we believe the trial court could have properly concluded that the officers' actions would have been as Bauers testified. Aside from the agents' visual observation of the marijuana, all other information contained in the affidavit was known to the police prior to their opening the greenhouse door and viewing the marijuana plants. This information by itself constitutes more than sufficient probable cause to justify issuance of a warrant.

In *State v. Hodges*, 287 N.W.2d 413 (Minn.1979) the Minnesota Supreme Court held that, notwithstanding an unlawful entry of a warehouse by police, the exclusionary rule did not require suppression of evidence subsequently seized pursuant to a warrant. There, the affidavit, in addition to information discounted pursuant to the unlawful entry, also contained lawfully obtained information about the contents of the warehouse from an independent source. The supreme court redacted the tainted information from the affidavit in determining the validity of the warrant. The court held the lawfully obtained information established probable cause and, apart from the tainted information, justified issuance of the search warrant. *Id.* at 416.

As in *Hodges*, the affidavit supporting the instant warrant, redacted of tainted information, independently provides probable cause for the warrant's issuance. Agents Bauers and Gielen were aware the greenhouse contained marijuana, not only from the information obtained from the confidential informant, but also from the "obvious and strong" odor of marijuana emanating from the structure. This court has determined that "the detection of odors *alone*, which trained police officers can identify as being illicit, constitutes probable cause to search * * *." *State v. Pierce*, 347 N.W.2d 829, 833 (Minn.App.1984) (emphasis added); *see also United States v. Ard*, 731 F.2d 718, 723 (11th Cir.1984) (strong odor of marijuana around truck located in open field sufficient for finding of probable cause).

■ Although the Lozars contend that the agents' olfactory examination of the inside of the greenhouse, no less than their visual intrusion, was an unlawful search which violated their reasonable expectation of privacy under the Fourth Amendment, we conclude the agents' perceptions were made in "open fields" where the Lozars had no expectation of privacy. *See State v. Sorenson*, 441 N.W.2d 455, 458 (Minn. 1989); *State v. Nolan*, 356 N.W.2d 670, 671 (Minn.1984). The Minnesota Supreme Court has broadly construed the "open fields" doctrine to apply not just to an open field, but also to intrusion by the government anywhere except the curtilage of

homes and other areas in which a reasonable expectation of privacy can be proven. *Sorenson*, 441 N.W.2d at 460. It cannot be said that the location from which the agents perceived the odor of marijuana, only a short distance off a public road, was in such proximity to the Lozars' home as to be within its curtilage. *See State v. Krech*, 403 N.W.2d 634, 636–37 (Minn.1987).

The second prong of the *Murray* analysis requires a determination of whether disclosure of the illegal intrusion into the Lozars' greenhouse *affected* the magistrate's decision to issue the warrant. The trial court commented on the narcotics agents' "forthrightness * * * in disclosing their clearly improper conduct" and rejected any suggestion that the magistrate would allow tainted information to enter into his decision. Because the affidavit, redacted of tainted information, independently establishes probable cause, we are not compelled to find the magistrate's decision was affected without the slightest indication the trial court considered such information in making its probable cause determination.

### Confidential Informant

■ In reviewing a magistrate's determination of probable cause, a reviewing court must give deference to the magistrate's decision and uphold the determination if there is a "substantial basis" for the determination in light of the "totality of the circumstances." *State v. McCloskey*, 453 N.W.2d 700, 703 (Minn.1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983)).

■ We conclude that on the basis of all the significant facts presented in the affidavit viewed together, the affidavit provided the magistrate with sufficient grounds to determine the agents of the Arrowhead Drug Task Force had the requisite probable cause to believe a search of the Lozars' property would result in the discovery of marijuana.

The Lozars claim the informant, who wished to remain anonymous for fear of reprisal, could not qualify as a so-called "citizen informer of presumed honesty" because the law enforcement officers failed to conduct a criminal history check on the individual. *See State v. Siegfried*, 274 N.W.2d 113 (Minn.1978). In *McCloskey*, however, the supreme court recently determined that the mere fact that an informant did not qualify as a citizen informant of presumed reliability does not mean the informant was of doubtful reliability or from the criminal subculture. *Id.*, 453 N.W.2d at 703.

The *McCloskey* court concluded all the facts relating to an informer must be considered in making a totality of the circumstances analysis. Regardless of whether Bauers' informant qualified as a "citizen informant," we hold the totality of the circumstances supports a finding of probable cause.

The informant told Bauers that a marijuana operation was taking place in a greenhouse in Lake County, outside of Ely near White Iron Lake, within walking distance from the Silver Rapids Lodge, and that the operation was being conducted by an individual named Larry, who lived on a lake, and had an expensive water ski boat.

The agents were able to corroborate each piece of the information given by the informant, including the detailed description of the greenhouse. This corroboration lends sufficient credence to the informant's tip. *See McCloskey*, 453 N.W.2d at 704.

■ The Lozars additionally argue the application for a search warrant contained information and inferences which were designed to mislead the issuing magistrate. The Lozars contend that Agent Partyka inserted statements in the affidavit regarding the date Bauers received the informant's tip and the Lozars' legitimate use of the greenhouse, which were factually incorrect.

In *State v. Moore*, 438 N.W.2d 101 (Minn. 1989), the Minnesota Supreme Court outlined the relevant principles concerning misrepresentations in a search warrant affidavit:

A search warrant is void, and the fruits of the search must be excluded, if the application includes intentional or reckless misrepresentations of fact mate-

rial to the findings of probable cause. A misrepresentation is "material" if when set aside there is no longer probable cause to issue the search warrant. If so, then the court must determine that the police deliberately or recklessly misrepresented facts, because innocent or negligent misrepresentations will not invalidate a warrant.

*Id.* at 105 (citations omitted).

That the information received by Bauers was three and one-half weeks old rather than one and one-half weeks old could not have rendered the information so stale as to have an appreciable effect on the magistrate's determination. Furthermore, the fact that the Lozars were engaged in a legitimate horticultural business does not mean that they were not engaged in an ongoing large-scale marijuana growing business. The information supplied by the confidential informant was corroborated both by his description of the operation and the individual involved. Under such circumstances, we conclude the search warrant was not rendered invalid by the alleged misrepresentations made by Partyka.

### 2. *Sufficiency of Evidence*

■ Eloise Lozar maintains the evidence at trial was insufficient to support the trial court's verdict finding her guilty of possession of marijuana with intent to distribute, and possession of marijuana as a dealer without affixing tax stamps. Eloise argues her husband's statements were not admissible against her and, as such, there was insufficient evidence to support her conviction.

■ This court must determine whether, upon review of the record and the legitimate inferences that could be drawn from the record, a trier of fact could reasonably have concluded that Eloise was guilty. *See State v. Daniels*, 361 N.W.2d 819, 826 (Minn.1985). Such a standard applies to cases heard with or without a jury. *State v. Hughes*, 355 N.W.2d 500, 502 (Minn.App. 1984), *pet. for rev. denied* (Minn. Jan. 2, 1985).

We conclude that, apart from her husband's statements implicating her, ample evidence was presented to support Eloise's conviction. The trial court found Eloise in constructive possession of at least the 50 pounds of marijuana found in the Lozars' house and garage, both in packaged and unpackaged form.

■ The purpose of the constructive possession doctrine is to include within the possession statute those cases where the state cannot prove actual or physical possession at the time of arrest, but where the inference is strong that the defendant at one time physically possessed the substance or exercised dominion and control over it. *State v. Florine*, 303 Minn. 103, 105, 226 N.W.2d 609, 611 (1975). From the evidence of record, there is an overwhelming probability that Eloise Lozar was exercising dominion and control over a substantial quantity of marijuana seized from the parties' home and garage; areas in which both Eloise and Larry possessed joint ownership and control.

From its determination, the trial court concluded that both Lozars had the requisite intent to sell based on the large number of small packages containing marijuana found in the house and garage, the scale appropriate for weighing marijuana, the large number of plastic bags in the house suitable for packaging additional marijuana, and the $5,100 in cash found in the safe which Eloise opened.

■ The intent to sell or distribute a controlled substance is usually proved circumstantially. Evidence tending to show such intent usually includes evidence as to the large quantity of drugs or of other evidence as to the manner of packaging. *State v. White*, 332 N.W.2d 910, 912 (Minn. 1983). Here, a sufficiently large amount of marijuana, as well as other indicia of an intent to distribute, was found in an area over which Eloise exercised control. An examination of this evidence in a light most favorable to the verdict supports Eloise Lozar's constructive possession of marijuana and her conviction.

### DECISION

Notwithstanding the narcotics agents' illegal intrusion into the Lozars' greenhouse,

the trial court properly refused to suppress evidence seized pursuant to the subsequent warrant. The averments establishing probable cause were derived from an independent source. We believe the evidence of record supports a finding of constructive possession and establishes Eloise's intent to sell or distribute marijuana. Accordingly, the Lozars' convictions are affirmed.

Affirmed.