**STATE of Minnesota, Respondent,**

v.

**Robert William BRADY, Appellant.**

No. C9–97–264.

Court of Appeals of Minnesota.

Oct. 14, 1997.

Hubert H. Humphrey, III, Attorney General, St. Paul, and Robert M.A. Johnson, Anoka County Attorney, M. Katherine Doty, Anoka County Attorney's Office, Anoka, for Respondent.

Michael F. Cromett, St. Paul, and Mark G. Giancola, Anoka, for Appellant.

Considered and decided by KLAPHAKE, P.J., and DAVIES and PETERSON, JJ.

**OPINION**

KLAPHAKE, Judge.

Appellant Robert William Brady was charged with fifth-degree controlled substance crime after police seized marijuana and other items from his townhouse and another residence. Following an omnibus hearing, the trial court declined to suppress the evidence. Appellant waived his right to a jury trial, submitted the case on stipulated facts, and now appeals from his conviction. We reverse.

## FACTS

On August 14, 1995, George Plew, vice-president of a Coon Rapids townhouse association, received a complaint of water leaking from a townhouse at 1529 121ST Avenue N.W. Plew and Joseph Grant, another association board member, went to the townhouse. Grant climbed through a window when no one answered the door. Once inside the townhouse, the two men discovered the source of the leak. Plew also discovered 16 growing marijuana plants in the basement and reported to the Coon Rapids Police Department that he had observed a marijuana growing operation.

Officer Pantelis responded to the call. After speaking with Plew, Pantelis entered the townhouse without a warrant and observed what he believed to be growing marijuana plants. He then called Investigator Robert Trusler, a Coon Rapids police officer assigned to the Anoka–Hennepin Drug Task Force.

When Trusler arrived at the townhouse, he spoke with Pantelis and then entered the townhouse to observe the marijuana plants. Trusler later applied for a warrant to search the townhouse, which a magistrate issued.

During execution of the warrant, officers found several marijuana plants, bags containing marijuana, assorted paraphernalia used for growing marijuana, two handguns, several boxes of ammunition, and packaging for two additional handguns that were not found during the search. Officers also found various documents linking the residence to appellant. The documents indicated that appellant had another residence in Bloomington.

After Trusler verified that appellant actually resided at the Bloomington address, he requested a search warrant for that address. During execution of a warrant on August 15, police arrested appellant. Officers also found four marijuana pipes, marijuana rolling papers, and approximately $1,800 in cash during the search.

Appellant was charged with fifth-degree controlled substance crime under Minn.Stat. § 152.025, subd. 1(1) (1994), and being a felon in possession of a pistol under Minn.Stat. § 624.713, subd. 1(j)(3) (1994). At an omnibus hearing, appellant sought to suppress all the evidence against him because it was seized after the unlawful entries into the Coon Rapids residence. The trial court rejected appellant's arguments.

Following a trial based on stipulated facts, appellant was convicted of the fifth-degree controlled substance offense. Appellant seeks review of his conviction, challenging the admissibility and sufficiency of the evidence.

## ISSUE

Did the trial court err in concluding that the search warrant was a genuinely independent source of the evidence seized?

## ANALYSIS

■ Appellant argues that the evidence seized in the townhouse search must be suppressed because the officers unlawfully entered the townhouse to "make sure" marijuana was present before they sought the warrant. As we warned in *State v. Lozar*, 458 N.W.2d 434 (Minn.App.1990), *review denied* (Minn. July 31, 1990), a "true confirmatory search" requires suppression of the later-obtained evidence. *Id.* at 439; *see also Murray v. United States*, 487 U.S. 533, 540, 108 S.Ct. 2529, 2534–35, 101 L.Ed.2d 472 (1988) (to determine whether warrant is independent of illegal entry, one must ask whether it would have been sought even if what actually happened had not occurred); 5 Wayne R. LaFave, *Search and Seizure* § 11.4(f), at 299 (3rd ed.1996) (warrant tainted if police entered dwelling merely to see if there was anything worth getting warrant for).

According to the Supreme Court in *Murray*,

[t]he ultimate question * * * is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue. This would not have been the case if the agent's decision to seek the warrant was prompted by what they had seen during the initial entry.

*Id.* at 542, 108 S.Ct. at 2535–36.

■ As Professor LaFave explains,

what counts is whether the actual illegal search had any effect in producing the warrant. Surely this covers any case in which the search truly was "confirmatory"i.e. where the police, without regard to whether they mistakenly believed they lacked probable cause or correctly believed they had probable cause, nonetheless wanted a greater assurance that evidence was in the premises before expending all the time and effort inevitably involved in obtaining and executing a search warrant.

5 Wayne R. LaFave, *Search and Seizure* § 11.4(f), at 299.

■ Here, both Officers Pantelis and Trusler entered the townhouse without a warrant after Plew stated that the townhouse contained marijuana.[1] This raises serious concerns as to whether the officers believed Plew. Furthermore, Trusler admitted that he entered the townhouse to ensure that there was illegal activity in the townhouse. At the omnibus hearing, Trusler testified as follows:

A. I wanted to confirm, you know, for my own—to satisfy my own interest or curiosity that it *in fact* was a marijuana growing operation.

\*　\*　\*　\*　\*　\*

Q. You went into the residence to make sure that what was in there was actually some kind of illegal activity; isn't that correct?

A. Correct.

Q. It was after you found that that you determined it was time to get a search warrant, correct?

A. Correct.

(Emphasis added.) In addition, the trial court specifically found that Trusler entered the townhouse to confirm the existence of the marijuana growing operation and sought the warrant only after that confirmation.

Independently applying the Fourth Amendment case law to these facts, we conclude the search was "confirmatory," and all evidence obtained as a result of the warrant must be suppressed. *See Murray*, 487 U.S. at 538, 108 S.Ct. at 2534 (discussing search now, warrant later scenario); *Lozar*, 458 N.W.2d at 439 (confirmatory search requires suppression of later-obtained evidence); 5 Wayne R. LaFave, *Search and Seizure* § 11.4(f), at 299. Because we are reversing based on the illegal confirmatory search, we need not reach the other claims raised by appellant.

### DECISION

Because the evidence used to convict appellant was unlawfully obtained and should have been suppressed, we reverse.

**Reversed.**

---

1. The state concedes that the first officer on the scene, Pantelis, entered the townhouse unlawfully. While Pantelis did not testify at the omnibus hearing, Trusler testified that Pantelis told him that he "went into the residence and saw for himself the marijuana growing operation."