**STATE of Minnesota, Respondent,**

v.

**Gerald Alan HANSON, Appellant.**

**No. A09–2124.**

Court of Appeals of Minnesota.

Nov. 9, 2010.

Lori Swanson, Attorney General, St. Paul, MN; and Richard R. Maes, Lyon County Attorney, Marshall, Minneapolis, for respondent.

David W. Merchant, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by JOHNSON, Presiding Judge; ROSS, Judge; and CRIPPEN, Judge.*

## OPINION

ROSS, Judge.

This drug case requires us to decide the quality of circumstantial evidence necessary to support a conviction for intent to sell. Police searched Gerald Hanson's house and found methamphetamine, a torch, a scale, pipes, plastic baggies, and other paraphernalia. The state charged Hanson with drug possession but later added the charge of possession with intent to sell, and a jury found him guilty. Hanson appeals his conviction of first-degree controlled substance crime of possession with intent to sell methamphetamine. Because the circumstantial evidence of Hanson's guilt does not exclude the reasonable inference that he intended only to personally use the methamphetamine discovered in his home rather than to sell it, we reverse his conviction.

## FACTS

Gerald Hanson was alone in his house when Officers Eric Wallen and Nicholas Donahue knocked on his door. The officers had been looking for a probation-violator and heard that she was there. Hanson told them she was not there but allowed them to come inside to look for her. He waited in the living room while police searched the other rooms and basement.

Officers soon called him into the master bedroom. Officer Wallen inquired about items he had discovered on a dresser. He pointed out a bag of "crystal-like material" that he thought was methamphetamine. Next to the bag were two glass pipes of the type used to smoke methamphetamine and a glass container "like a small bowl" that contained residue of a white substance he believed was methamphetamine. Hanson told the officers that the bag contained riboflavin (a vitamin). Officer Wallen was not persuaded. He called Investigator Anthony Rolling to bring a methamphetamine test kit to the house. While the officers

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

waited, Hanson told them that the bag was "garbage" left by a friend. Then he told them that the items had been there for over a month. Hanson's various explanations did not dissuade Officer Wallen from testing the substances.

Investigator Rolling arrived and examined the bag and the bowl using a preliminary test that indicated they contained methamphetamine. Police arrested Hanson and obtained a search warrant for his house.

Police took Hanson to jail, where they found a digital scale in his pocket. And officers also collected evidence at the house. From the living room, officers seized three glass pipes, an attachment for a propane torch, a propane tank, and a number of plastic baggies containing white residue. From the bedroom, they seized a plastic plate with white residue, a plastic bowl, a plastic spoon, and a glass pipe. They also seized numerous plastic baggies and a razor blade that they found in a dresser drawer. From the bathroom, they seized a glass pipe and a bag with 23.6 grams of a white substance. The state charged Hanson with drug possession, drug-paraphernalia possession, and drug possession with intent to sell, constituting first- and second-degree controlled substance crimes in violation of Minnesota Statutes sections 152.092, 152.021, and 152.022.

At Hanson's trial, a Minnesota Bureau of Criminal Apprehension forensic scientist who evaluated the seized items testified to the following laboratory results. The plastic baggie with white residue tested positive for methamphetamine. The contents of one baggie containing 8.9 grams of white powder tested positive for methamphetamine. The 2.4 grams of white powder in a second bag similarly tested positive for methamphetamine. And the 1.3 grams of powder found in a glass container also tested positive for methamphetamine. The scientist could not identify the 23.6 grams of white powder from the bag found in the bathroom; it tested negative for methamphetamine and for other controlled and noncontrolled substances. The pipes, razor blade, spoon, and other baggies were not tested.

Officer Jody Gladis, a member of a multiagency drug and gang task force, provided expert testimony about drug dealing. Officer Gladis opined how each piece of evidence related to methamphetamine use and distribution. He testified that one of the baggies containing a white residue along with the plate, the bowl, the spoon, the multiple empty baggies, and the razor blade were all indicative of a dealer cutting and preparing methamphetamine for sale. But on cross-examination, Officer Gladis recognized that although dealers usually buy methamphetamine in larger quantities and divide it into smaller packages for resale, often diluting it with a cutting agent, police had found no large baggies or cutting agent in Hanson's home. And the 23.6 grams of a white substance that police originally suspected to be a cutting agent was never identified or determined to be a cutting agent. Officer Gladis also testified that the digital scale found on Hanson might be kept by a methamphetamine user to protect himself from being shorted when buying drugs for personal use. Similarly, Officer Rolling testified that Hanson's possessing the butane torch is consistent with a user's preparing methamphetamine for personal use.

The jury found Hanson guilty on all charges and the district court sentenced him to 110 months in prison. Hanson now appeals only from his conviction of possession with intent to sell.

## ISSUE

Is the evidence obtained from Hanson's home and person, consisting of 12.6 grams

of methamphetamine, a butane torch, a digital scale, multiple plastic baggies, pipes, and other paraphernalia, sufficient to prove beyond a reasonable doubt that Hanson intended to sell methamphetamine?

## ANALYSIS

■ Hanson maintains that the evidence was insufficient to prove that he intended to sell the methamphetamine that police found in his house. We analyze insufficient-evidence claims by determining "whether, given the facts in the record and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged." *Bernhardt v. State,* 684 N.W.2d 465, 476 (Minn.2004) (quotation omitted). In doing so, we assume that "the jury believed the state's witnesses and disbelieved contrary evidence." *State v. Brocks,* 587 N.W.2d 37, 42 (Minn.1998).

■ The state introduced no direct evidence of Hanson's intent to sell the drugs. Intent must therefore be proven with the circumstantial evidence. This is not uncommon. *See State v. Davis,* 656 N.W.2d 900, 905 (Minn.App.2003), *review denied* (Minn. May 20, 2003) ("The intent element of a crime, because it involves a state of mind, is generally proved circumstantially."). Although circumstantial evidence merits the same weight as direct evidence, *State v. Bauer,* 598 N.W.2d 352, 370 (Minn.1999), we must apply a stricter degree of scrutiny on review of convictions that depend on circumstantial evidence, *State v. Jones,* 516 N.W.2d 545, 549 (Minn. 1994). In circumstantial-evidence cases, the evidence "must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than

guilt." *State v. Taylor,* 650 N.W.2d 190, 206 (Minn.2002). This test applies even when a single element, including the required *mens rea,* depends on circumstantial evidence. *State v. Al–Naseer,* 788 N.W.2d 469, 474 (Minn.2010). We look both at "whether the inferences leading to guilt are reasonable" and whether "there are no other ... rational inferences that are inconsistent with guilt." *State v. Andersen,* 784 N.W.2d 320, 330 (Minn.2010) (quotation omitted). And we give "no deference to the fact finder's choice between reasonable inferences." *Id.* at 330–31 (quotation omitted).

■ The circumstantial evidence supporting the jury's inference that Hanson intended to sell methamphetamine is as follows: he possessed (1) 12.6 grams of methamphetamine divided between three locations (he had a baggie with 8.9 grams, a baggie with 2.4 grams, and a glass container with 1.3 grams); (2) seven pipes spread throughout his house; (3) a butane torch and fuel; (4) an empty baggie with residue that tested positive for methamphetamine; (5) numerous untested empty baggies, some of which contained a white powdery residue; (6) a plate, bowl, and spoon with residue; (7) a razor blade; and (8) a small digital scale. He also possessed 23.6 grams of another powdery substance, but its identity was never determined.

The evidence required to prove intent to sell methamphetamine necessarily varies depending on the nuanced facts of each case. So we look to caselaw to frame our analysis.

In *State v. White,* 332 N.W.2d 910, 912 (Minn.1983), the supreme court held that "[e]vidence tending to show [intent to sell] includes evidence as to the large quantity of drugs possessed, evidence as to the manner of packaging, and other evidence." In that case, evidence of a large quantity

of marijuana that was "far in excess of that needed for personal use" and found in open fields and in individual containers with defendant's first name or initials on them, was sufficient to prove intent to sell. *Id.* at 911–12.

In *State v. Marshall,* 411 N.W.2d 276, 281 (Minn.App.1987), *review denied* (Minn. Oct. 26, 1987), we held that a large amount of cocaine (almost 40 grams), $4,700 in cash on the defendant's person, writings showing over $100,000 in cocaine transactions, $60,000 in cash hidden in the defendant's television, a scale, razor blades, paper bindles, and cutting agents, were sufficient to prove by a preponderance of evidence the defendant's "high position in the drug distribution hierarchy" to support an upward departure in sentencing.[1]

In *State v. Collard,* 414 N.W.2d 733, 735–36 (Minn.App.1987), *review denied* (Minn. Jan. 15, 1988), we held that the defendant's Tupperware container, which contained a large wad of cash (over $2,000), an address book with notations and names of known drug dealers, three packets of cocaine, and empty paper packets, constituted sufficient evidence to support the jury's finding of intent to sell.

In *State v. Lozar,* 458 N.W.2d 434, 441 (Minn.App.1990), *review denied* (Minn. Sept. 28, 1990), we also held that the evidence was sufficient to prove intent to sell. There, the defendant possessed at least 50 pounds of marijuana, a large number of small packages containing marijuana, a scale, a large number of plastic bags, and over $5,000 in cash. *Id.*

And in *State v. Heath,* 685 N.W.2d 48, 54, 56–57 (Minn.App.2004), *review denied* (Minn. Nov. 16, 2004), we held that photographs admitted into evidence (depicting "solvents, tools, latex gloves, coffee filters, aluminum foil, packages of Sudafed, lithium batteries, rubber tubing, a blender, thermoses, and fan ... a mirror, phone cards, and an electronic scale"), 9.6 grams of methamphetamine found under a vehicle, additional packaging materials, and three bindles of equal weight, was sufficient evidence to prove the intent to sell.

The circumstantial evidence in each of these cases has a common feature that is missing here. The evidence included some component that was so inconsistent with proof of mere personal use that the factfinder could not reasonably mistake a drug user for a drug seller. So each case not only included extensive evidence of possession, but also at least some circumstantial evidence that pointed only to distribution, such as large amounts of cash, writing with transaction amounts and phone numbers, the presence of a methamphetamine lab, a grow operation, and the uniform packaging of drugs.

 The jury reasonably concluded that the additional evidence in the record here (the significant quantity of drugs, the empty plastic baggies, a plate, a bowl, the spoon, a digital scale, a razor blade, and other paraphernalia) supports an inference of Hanson's intent to sell. But this is not enough. This same evidence also supports the inference that Hanson did *not* intend to sell, but instead intended only to use the methamphetamine personally. The circumstantial evidence related to drug possession that is consistent with a defendant's personal use of drugs cannot alone prove beyond a reasonable doubt that the defendant planned to sell the drugs. The

---

1. We recognize that the standard of proof for a sentencing departure differs from the higher standard necessary for a conviction. But the existence of plausible alternatives to the intent to sell is relevant when reviewing the reasonableness of a fact finder's determination in both settings.

state must also introduce some evidence that overcomes the inference and reasonably excludes the possibility of only personal use. For the following reasons, we hold that the evidence of Hanson's alleged intent to sell is insufficient because it could also lead to the reasonable inference that he intended only to personally use the methamphetamine.

 We first address the amount of methamphetamine. Evidence tending to show intent to sell "includes evidence as to the large quantity of drugs possessed." *White*, 332 N.W.2d at 912. It is possible that quantity alone could prove intent to sell. In *State v. Jenkins*, 411 N.W.2d 504, 508 (Minn.App.1987), for example, we held that sufficient evidence supported a finding of conspiracy to sell marijuana where the trial court stated, "One would be a fool to conclude that [the defendants] intended to buy 15 pounds of marijuana from the 50 pound bale for their own use." *Cf. United States v. Franklin*, 728 F.2d 994, 998–99 (8th Cir.1984) (stating that intent to sell under similar federal statute can be "inferred solely from possession of a large quantity of the substance" but not from possession of a small amount). But Hanson did not possess a large enough quantity from which a fact finder could infer his intent to sell. There is no specified amount of methamphetamine possession that raises a statutory presumption of intent to sell, but we think it is significant that possession of at least 25 grams is necessary to constitute a first-degree mere possession crime. *See* Minn.Stat. § 152.021, subd. 2(1) (2008) (first degree controlled substance for possession of over 25 grams). The 12.6 grams of methamphetamine in Hanson's possession is not enough for even a first-degree possession charge, and the jury lacked any basis on the testimony of the state's experts to find that this quantity is so large that only

personal use is unlikely. We conclude that Hanson did not possess enough methamphetamine to prove his intent to sell beyond a reasonable doubt.

We next consider Hanson's possession of a digital scale. We agree that this fact also could lead to the inference of his intent to sell. Officer Donahue testified that digital scales are often used in the sale of narcotics. But the state did not prove that Hanson used his scale to sell methamphetamine. And Officer Donahue also testified that scales are used by the purchasers of drugs as well as by sellers. This comports with common experience and intuition; no one is surprised that grocers provide scales both for their produce shoppers and their cashiers. Officer Gladis similarly testified that the digital scale found on Hanson could indicate a methamphetamine purchaser who wanted to protect himself from being cheated in transactions. Because the circumstantial evidence of Hanson's scale is consistent with personal use, it fails to "exclude beyond a reasonable doubt any reasonable inference other than guilt" for the more serious crime of possession with intent to sell. *Taylor*, 650 N.W.2d at 206. The digital scale is therefore not sufficient to prove Hanson's guilt.

We turn to the small plastic baggies and razor blade found in Hanson's home. The record does not inform us how many baggies the police found. Investigator Rolling testified that the baggies were "very similar to what you would package methamphetamine in for sale." And Officer Gladis testified that the baggies and razor blade were consistent with a methamphetamine seller cutting and preparing to distribute methamphetamine. On this testimony, the evidence of the baggies and razor blade could lead to the reasonable inference that Hanson intended to sell the methamphetamine. But again, the state offered no

reason to rule out the alternative inference, which is that the baggies and razor blade were evidence of Hanson's mere personal use. Plastic baggies and razor blades by themselves do not prove intent to sell. They could just as reasonably indicate Hanson's intent to separate drugs that he purchased for himself. Their incriminating nature as evidence of intent to sell is apparent only if other evidence of selling is present. The purchase of a very large quantity of baggies or the use of them to contain multiple, evenly divided packets of drugs, for example, would imply a plan to sell and be inconsistent with mere personal use. *Cf. Heath*, 685 N.W.2d at 57. No such evidence exists here. And although both police witnesses testified that Hanson's baggies and razor blade were consistent with selling methamphetamine, neither testified that they were inconsistent with merely using the methamphetamine. We conclude that the presence of baggies and a razor blade is not enough to prove Hanson's intent to sell.

This leaves only the other paraphernalia. The possession of the butane torch, numerous pipes, and a plate, bowl, and spoon with white residue, are together also indicative of personal use. According to the state's witnesses, pipes are used to smoke methamphetamine, a plate, bowl, and spoon are used to cut, mix, and prepare it, and the butane torch is used to vaporize it.

These are all activities consistent with personal use.

In sum, although we recognize that the jury had a reasonable basis to believe that Hanson intended to sell the methamphetamine, the state did not introduce any evidence proving that Hanson's intent to sell was the only reasonable possibility. None of the circumstantial evidence pointed only to his intent to sell, and the conviction for intent to sell is therefore infirm.

## DECISION

After reviewing this circumstantial evidence case closely, we conclude that although the circumstances proved are consistent with guilt, they are not inconsistent with a rational hypothesis other than guilt. Because the evidence supports the reasonable inference that Hanson possessed the methamphetamine only for personal use, and we give no deference to the jury's choice between reasonable alternative inferences, we must reverse Hanson's conviction of possession with intent to sell.

**Reversed.**