*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1623**

State of Minnesota,
Respondent,

vs.

William Marvin Boyenga,
Appellant.

**Filed May 26, 2015
Affirmed
Hooten, Judge**

Mower County District Court
File No. 50-CR-13-2014

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kristen Nelson, Mower County Attorney, Jeremy Clinefelter, Assistant County Attorney, Austin, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Cleary, Chief Judge; and Hooten, Judge.

## UNPUBLISHED OPINION

**HOOTEN**, Judge

On appeal from his conviction of fifth-degree possession of a controlled substance, appellant argues that the district court erred by denying his motion to suppress because

the evidence was obtained as the result of an unconstitutional search of his house. We affirm.

**FACTS**

On the afternoon of September 3, 2013, Austin Police Officer Kris Stein responded to a report of a hit-and-run accident. He learned that the suspect vehicle was a black pickup truck. Austin Police Sergeant Joseph Milli, who was also on duty that day, ran a license plate search on the suspect vehicle, which matched the plate number of an older black pickup truck registered to appellant William Marvin Boyenga. Sergeant Milli was familiar with Boyenga because, in 2004, he had executed a search warrant of Boyenga's house and had found a large amount of fresh marijuana. Boyenga's house was located three blocks from the location of the hit-and-run accident, and Sergeant Milli went directly to the house.

When Sergeant Milli arrived at Boyenga's house, he did not see a black pickup truck in the driveway. Sergeant Milli indicated at the suppression hearing that the house was located on the corner of two residential streets. The front door faced south, and the side door faced east. Each door was visible from the street and had a sidewalk leading up to it from the street, as well as a concrete stoop. There was an awning and a light fixture above both doors. There were house numbers and a mailbox next to the front door, but there were no railings outside the front door. The side door was closest to the garage, and there were railings connected to the side-door stoop.

Sergeant Milli parked near the side door, then walked up and knocked on the door. There was no response, but Sergeant Milli detected a faint odor of fresh marijuana

2

coming from the house. He then walked over to the garage, looked into a garage window, and saw a black pickup truck. The sergeant knocked on the side door again, but again got no response. He looked into another garage window, saw that the license plate matched the suspect vehicle, and noticed fresh damage on the vehicle. He then saw Boyenga looking at him through the blinds inside the house, and the sergeant motioned for him to come outside. By then, Officer Stein and another officer had arrived at Boyenga's house.

Boyenga exited the side door of his house. He walked into the yard and spoke with the officers about the accident. He seemed confused by some of the questioning and was not able to give his address. He also gave different versions of the accident. The officers asked for his driver's license and proof of insurance. Boyenga retrieved his proof of insurance from inside his pickup truck, but stated that his driver's license was inside his house. Sergeant Milli testified to the following:

> MILLI: [Boyenga] started towards the house. I followed him. He opened the [side] door. He started [to go] in the house. I took one step in. He turned around. He grabbed me by the shoulders and tried to push me out, saying, "You can't come in here."
> PROSECUTOR: And what did you do?
> MILLI: As soon as he opened the door, I was hit by an overwhelming smell of fresh marijuana. When he grabbed me and started pushing me, I grabbed him and I pulled him out of the house.

Based on Sergeant Milli's training and experience, he believed that there was a large amount of marijuana growing in the house. After Boyenga and Sergeant Milli exited the house, Boyenga was detained and eventually taken into custody.

Officer Stein also testified at the suppression hearing and stated that he and Sergeant Milli followed Boyenga from the yard to his house. He testified that, as he was standing behind Sergeant Milli on the stoop, he immediately smelled a strong odor of marijuana after Boyenga opened the side door.

Sergeant Milli called Austin Police Detective Travis Heickley and asked him to come to the scene and assist. Detective Heickley later drafted a search warrant application based on the officers' suspicion that marijuana was present in the house. The supporting affidavit to the warrant application indicates that Detective Heickley had over 26 years of law enforcement experience, was specially trained in narcotics investigations, and had taken part in numerous narcotics investigations over the course of his career. The affidavit also states in relevant part:

> On this day, 09-03-2013 at approximately 1438 hours[,] Austin Police Sergeant Milli had arrived at [Boyenga's residence] to conduct a follow-up investigation into a hit and run accident . . . .
>
> Upon arriving at the residence . . . , Milli attempted to contact the registered owner Boyenga at the residence with negative results. . . . Milli [eventually] made contact with a person at the residence who identified himself as Boyenga who was occupying the residence and admitted to Milli of being involved in an auto accident.
>
> Milli observed Boyenga to be anxious and confused and followed Boyenga back to his residence from the garage to obtain his [driver's] license. Milli followed behind Boyenga into the residence and immediately recognized the strong odor [of] fresh marijuana coming from the residence. Boyenga pushed Sgt. Milli towards the residence exit door[,] at which point in time Milli took physical custody of Boyenga and arrested him. . . .

4

Sgt. Milli then requested on-call Detective Heickley to come to the scene based on observations Milli made from the residence regarding the overwhelming presence of marijuana odor from the residence. Upon arrival Detective Heickley was advised of the situation and also observed the strong odor of fresh marijuana from the back door steps.

Following Boyenga's arrest[] officers observed the resident windows to be covered and two security cameras were installed on the outside of the residence perimeter. . . .

Heickley knows from past cases that Boyenga was arrested on two prior occasions for 3rd degree possession of marijuana with intent to sell . . . and felony 5th degree controlled substance [crime] . . . . On both occasions Boyenga had marijuana plants and grow equipment.

A search warrant was issued the same day, authorizing police to search Boyenga's house for marijuana and marijuana-related evidence. During the search, officers found fresh marijuana plants, dried marijuana plants, marijuana seeds, drug paraphernalia, and marijuana growing equipment. Police seized a total of 80.61 ounces of marijuana.

Boyenga was charged with one count of fifth-degree sale of a controlled substance and one count of fifth-degree possession of a controlled substance. He moved to suppress the evidence seized during the execution of the search warrant, claiming that the search warrant was invalid because it included information obtained during an unlawful entry into his house.

The district court denied Boyenga's motion to suppress, reasoning that

it was not until Milli had partially entered the residence that [Boyenga] turned and made his first and only action barring either officer from entry. At no time prior did [Boyenga] indicate to the officers that they were not allowed to follow him into the house while he looked for his driver['s] license. . . . Officer Milli's and Stein's detection of the

5

overpowering smell of marijuana occurred before either officer entered the home. Both officers were lawfully present at the door while investigating the traffic accident when they first detected the [odor]. This occurred before either officer stepped into the house. It was also detected inside the back door by the officers before they were stopped by [Boyenga] from proceeding any [farther] into the home. The detection of the strong odor of fresh marijuana by either officer outside of [the] home and just inside the door . . . was not obtained in violation of [Boyenga's constitutional rights].

After the district court denied the motion, the state dismissed the fifth-degree sale of a controlled substance charge. Boyenga waived his right to a jury trial, and the district court conducted a stipulated-evidence court trial pursuant to Minn. R. Crim. P. 26.01, subd. 4. The district court found Boyenga guilty of fifth-degree possession of a controlled substance and sentenced him to a stayed prison sentence of one year and one day with conditions, including the requirement that he serve 180 days in jail. This appeal followed.

### D E C I S I O N

Boyenga argues that the evidence obtained as a result of the search warrant should have been suppressed because Sergeant Milli's entry into the house and his ensuing observations violated the Fourth Amendment. In response, the state argues that the officers smelled a strong odor of marijuana before entering Boyenga's house and, in the alternative, received implicit consent to enter the house.

"When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590

6

N.W.2d 90, 98 (Minn. 1999). We review the district court's findings of fact under a clearly erroneous standard, but we review legal determinations de novo. *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006). Findings of fact are clearly erroneous if "we are left with the definite and firm conviction that a mistake occurred." *State v. Diede*, 795 N.W.2d 836, 846–47 (Minn. 2011). If there is reasonable evidence to support the district court's findings, we will not disturb them. *State v. Rhoads*, 813 N.W.2d 880, 885 (Minn. 2012).

The Fourth Amendment of the United States Constitution and article I, section 10, of the Minnesota Constitution prohibit unreasonable searches and allows for the issuance of search warrants only upon a showing of probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. "The exclusionary rule generally requires the suppression of evidence acquired as a direct or indirect result of an unlawful search." *State v. Lieberg*, 553 N.W.2d 51, 55 (Minn. App. 1996).

When faced with a challenge to the validity of a search warrant, this court's task on appeal is to determine whether the issuing judge had a "substantial basis" for concluding that probable cause existed. *State v. Secord*, 614 N.W.2d 227, 229 (Minn. App. 2000) (quotation omitted), *review denied* (Minn. Sept. 13, 2000). We examine the totality of the circumstances to make this determination. *Id.* The issuing judge is required "to make a practical, commonsense decision" as to whether, given all the circumstances set forth in the search warrant application, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quotations omitted). "In determining whether probable cause exists, both the district court and the

reviewing court may consider only the information in the application for the search warrant. We pay great deference to the district court's determination of probable cause supporting a search warrant." *Id.* (quotation and citation omitted).

Boyenga does not dispute that the search warrant on its face was supported by probable cause. The search warrant application states that Boyenga appeared to be "anxious and confused" when he spoke to the officers about the hit-and-run accident. It states that Sergeant Milli followed Boyenga "into the residence and immediately recognized the strong odor [of] fresh marijuana coming from the residence." The application does not indicate whether Sergeant Milli had consent to enter Boyenga's house, and it does not clearly indicate where Sergeant Milli was standing when he first detected the strong odor of marijuana. When Detective Heickley arrived, he "also observed the strong odor of fresh marijuana from the [side] door steps." The application states that two security cameras were installed outside the house and also states that Boyenga was arrested on two prior occasions for marijuana-related offenses. Based on the totality of the circumstances, we conclude that the issuing judge had a substantial basis for concluding that probable cause existed to believe that marijuana would be found inside Boyenga's house.

But, Boyenga argues that the search warrant was invalid because the evidence relied upon for the search warrant, i.e., the strong order of marijuana, was obtained as a result of the illegal entry by police into his house. Boyenga maintains that, absent the illegal entry, the police officers would not have had sufficient evidence to obtain a search

8

warrant, and the district court erred by denying his motion to suppress the evidence obtained as a result of the execution of the search warrant.

"The right to be secure in the place which is one's home, to be protected from warrantless, nonconsensual intrusion into the privacy of one's dwelling, is an important [F]ourth [A]mendment right." *State v. Olson*, 436 N.W.2d 92, 96 (Minn. 1989). Warrantless searches are per se unreasonable, subject to limited exceptions. *State v. Othoudt*, 482 N.W.2d 218, 221–22 (Minn. 1992). The state bears the burden of establishing the existence of an exception to the warrant requirement. *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001). "Generally, evidence seized in violation of the [C]onstitution must be suppressed." *State v. Jackson*, 742 N.W.2d 163, 177–78 (Minn. 2007).

The district court determined that Boyenga consented to Sergeant Milli's entry because "it was not until Milli had partially entered the residence that [Boyenga] turned and made his first and only action barring either officer from entry. At no time prior did [Boyenga] indicate to the officers that they were not allowed to follow him into the house . . . ."

We disagree that Boyenga consented to Sergeant Milli's entry. "[P]olice do not need a warrant if the subject of the search consents." *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013). To justify a warrantless search based on consent, the state must prove that the consent was freely and voluntarily given. *Id.* We examine the totality of the circumstances to determine whether consent was voluntary, including "the nature of the

encounter, the kind of person the defendant is, and what was said and how it was said." *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994).

The record indicates that Boyenga did not affirmatively invite either officer into his house. The officers "did not knock or in any way seek permission to enter" Boyenga's house. *Othoudt*, 482 N.W.2d at 222. Nothing in the record indicates that Boyenga's conduct manifested consent—for example, he did not motion for the officers to follow him, and he did not hold the door open for them. *See id.* at 223 ("We have never found that a law enforcement officer had consent to enter a dwelling without evidence of some indication, by someone, that the officer was invited inside."). Not explicitly objecting to an officer's entry is insufficient to establish consent. *Cf. Dezso*, 512 N.W.2d at 880 ("Failure to object is not the same as consent."). Because the state did not prove that Boyenga consented to Sergeant Milli's entry, the district court erred by concluding that the police legally entered Boyenga's house.

However, we conclude that the district court did not err in determining that the evidence obtained by the police officers was not the product of Sergeant Milli's illegal entry. Based on the testimony of the police officers at the suppression hearing, the district court found that Sergeant Milli and Officer Stein detected "the overpowering smell of marijuana . . . before either officer entered the home." Sergeant Milli testified that, "[a]s soon as [Boyenga] opened the door, I was hit by an overwhelming smell of fresh marijuana." He also testified that, when Boyenga "initially opened the door to enter the residence, I was hit with the smell of marijuana." Officer Stein testified that, "[w]hen the door was initially opened, I did smell a strong odor of marijuana." He clarified that

10

he smelled this strong odor while he "was still on the steps outside of the house to the [side] door." Both officers first detected the strong odor of marijuana as they were standing on the side-door stoop of Boyenga's house, which is a place where they were lawfully allowed to stand. *See State v. Krech*, 403 N.W.2d 634, 637 (Minn. 1987) ("[P]olice do not need a warrant or even probable cause to approach a dwelling in order to conduct an investigation if they restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches) . . . ." (Quotation omitted)). No Fourth Amendment search took place when the officers initially observed the incriminating evidence that led them to seek a search warrant. Moreover, Sergeant Milli's subsequent unconsented-to entry into Boyenga's house did not yield any *additional* incriminating evidence because Sergeant Milli made no *additional* observations from that standpoint. *See Segura v. United States*, 468 U.S. 796, 815, 104 S. Ct. 3380, 3391 (1984) ("[E]vidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence. Suppression is not justified unless *the challenged evidence* is in some sense the product of illegal governmental activity." (Emphasis added.) (Quotation omitted.)).

The record supports the district court's finding that the critical evidence utilized in the search warrant was obtained prior to Sergeant Milli's entry into Boyenga's house: a strong odor of fresh marijuana emanating from inside the house—an odor that was strong enough to lead the officers to suspect that there was a felony-level amount of fresh marijuana inside the house. The exclusionary rule does not apply here because the exclusionary rule prohibits only the "introduction of evidence seized during an *unlawful*

11

search." *State v. Lozar*, 458 N.W.2d 434, 438 (Minn. App. 1990) (emphasis added), *review denied* (Minn. Sept. 28, 1990).

Because there was no violation of Boyenga's Fourth Amendment rights and the evidence utilized in the search warrant was lawfully obtained, we conclude that the district court did not err by denying Boyenga's motion to suppress.

**Affirmed.**