STATE of Minnesota, Respondent,

v.

Kirk LIEBERG, Appellant.

No. C9–95–2138.

Court of Appeals of Minnesota.

Aug. 6, 1996.

Hubert H. Humphrey, III, Attorney General, Carol J. Bennett, Assistant Attorney General, St. Paul, Michael J. Thompson, Meeker County Attorney, Litchfield, for Respondent.

John M. Stuart, State Public Defender, Michael F. Cromett, Assistant Public Defender, St. Paul, for Appellant.

Considered and decided by PARKER, P.J., and SHORT and FOLEY, JJ.*

## OPINION

SHORT, Judge.

A jury found Kirk Lieberg guilty on three counts each of second-degree burglary and misdemeanor theft for the unauthorized entry into, and removal of women's undergarments from, three homes. On appeal, Lieberg argues the trial court erroneously refused to suppress evidence gathered in a search of his house because: (1) the affidavit, when properly sanitized, does not establish probable cause; and (2) the prior un-

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const.

lawful search prompted the authorities to seek the warrant.

### FACTS

Lieberg is an adult male with an I.Q. of 82, a diagnosed fetish (fixation on women's underclothing), and a 25–year history of stealing objects associated with his sexual disorder. After he physically assaulted a woman in a laundromat, Lieberg was committed to the state security hospital in 1977, conditionally paroled in 1984, and discharged by the Commissioner of Human Services in 1986. The following year, a homeowner returned from church and found Lieberg running from the house with a pair of bags. After the homeowner held Lieberg at gunpoint, the police arrived and discovered that the bags contained underwear belonging to the homeowner's daughters. As a result of this incident, Lieberg was convicted of burglary. In 1988, a woman found Lieberg rifling through her clothes at a laundromat. Although she notified police of the incident, no charges were filed against Lieberg. Later that year, another man returned to his house at lunchtime and found Lieberg in his bedroom closet, gathering women's underwear from a hamper. This incident resulted in Lieberg's second burglary conviction.

In July 1994, D.V. noticed that some of her underwear was missing. On August 16, someone forced open the entrance to her home and removed more of her undergarments. In October, someone broke into L.H.'s residence, but took nothing of value. The following month, a group of hunters found a bag containing L.H.'s wedding dress, underwear, perfume, pictures, and a piece of paper bearing her name. L.H. then talked with her sister-in-law and D.V. regarding the events. Shortly thereafter, L.H.'s sister-in-law discovered unfamiliar lingerie in her dresser, some of which L.H. and D.V. identified as their own. On January 31, 1995, N.B. found a broken window in her basement and a footprint on top of her dryer. After speaking with the police, she discovered that some of her underwear was gone.

art. VI, § 10.

Based on their familiarity with Lieberg, police officers suspected his involvement and placed him under surveillance. They also made three attempts to compare his footprints to the one found at N.B.'s home. First, they placed fresh snow around his mailbox, but did not obtain a footprint. Second, an officer gained entry to the Lieberg residence by pretending to have found a Bible in the road. This ploy failed to yield an opportunity to view the soles of Lieberg's shoes. And third, a different officer stopped Lieberg on the highway and, under the pretext of investigating a reported pop-machine vandalism, photographed the underside of Lieberg's tennis shoe. Finding a close similarity, the officers applied for a warrant and submitted an affidavit, which described:

1. The incidents under investigation;

2. Lieberg's criminal history;

3. A Wright County police officer's notes of a 1988 conversation with Lieberg's probation officer, who referred to Lieberg as an "accident waiting to happen";

4. A 1988 letter from the mayor of Cokato, Minnesota, who criticized a trial court's decision to release Lieberg into the community;

5. A neighbor's claim to have seen (a) a mid-size vehicle of inexact color that may have been maroon, brown, or "something else really dirty" parked in N.B.'s driveway on the morning of January 31, 1995, and (b) a man of medium to a-little-heavier-than-medium build walking from the car towards the house;

6. Another neighbor's observation of a "light, light grey" station wagon parked at D.V.'s residence on the day of a break-in;

7. Lieberg's station wagon, which has light metallic paint of a tan or copper hue;

8. The existence of a geographical connection between the break-ins and Lieberg's home; and

9. The stop of Lieberg's car, which produced a photograph demonstrating a similarity between Lieberg's tennis shoes and the footprint discovered at N.B.'s home.

The affidavit's attachments also showed that, between the mid–1970s to late–1980s Lieberg has been described as 5'7" to 5'9" and roughly 160 to 180 pounds, with more recent accounts placing his weight at the heavier end of the scale.

The police received and executed a search warrant on March 1, 1995. In Lieberg's room, they found women's undergarments hidden in a quilt, a cereal box, an ice cream bucket, and in various bags. The officers seized a few of the garments. Of the garments seized, D.V. identified one item, L.H. identified two, and N.B. identified one. The police also seized Lieberg's tennis shoes, which matched the footprint left at N.B.'s house.

At the omnibus hearing, Lieberg claimed the warrant's supporting affidavit was tainted by: (1) a photograph showing the tread of his shoes, which was the product of an unlawful search; and (2) the omission of a recent letter written by Lieberg's probation officer, which demonstrated an enlargement of Lieberg's freedom of movement and might have offset his earlier characterization of Lieberg as an "accident waiting to happen." Lieberg further argued that the remaining evidence could not establish probable cause because his criminal history was too stale to be relevant, and none of the victims' neighbors correctly described the color of his car or was able to identify him with precision. The trial court agreed the police acted unlawfully in obtaining the photograph of Lieberg's shoe because their warrantless stop did not justify more than a plain-view or consensual search. Because he was wearing rubber overshoes, Lieberg's tennis shoes were not in plain view, and the pretext used by the police vitiated any possibility of consent.[1] However, the trial court declined to suppress the fruit of the later search because a sanitized affidavit would have established probable cause, due to Lieberg's peculiar criminal history, the presence of a car similar to Lieberg's at or near the scene of two burglaries, and the

---

1. The state does not contest this ruling.

proximity of Lieberg's residence to those of the victims.

## ISSUES

I. Was there a substantial basis for the trial court's determination that a sanitized affidavit would have established probable cause?

II. Is a remand necessary, given the trial court's failure to decide whether the unlawful search prompted the authorities to seek a warrant?

## ANALYSIS

■ The United States Constitution prohibits unreasonable searches and allows the issuance of search warrants only upon a showing of probable cause. U.S. Const. amend. IV. The exclusionary rule generally requires the suppression of evidence acquired as a direct or indirect result of an unlawful search. *Murray v. United States,* 487 U.S. 533, 536–37, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988). However, in order to prevent criminals from turning police misconduct into a windfall, the United States Supreme Court has recognized the Constitution does not require suppression of evidence that was obtained through an independent source. *See id.* at 537, 542, 108 S.Ct. at 2533, 2535 (quoting *Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984), and discussing the independent source doctrine). This case requires us to decide whether the trial court properly applied the independent source doctrine, which allows the introduction of evidence obtained pursuant to a warrant that is genuinely independent of a prior unlawful search and would have been obtained "even if what actually happened had not occurred." *Id.* at 542 n. 3, 108 S.Ct. at 2536 n. 3.

■ At a suppression hearing following an unlawful search of the defendant's car and a subsequent search of the defendant's home pursuant to a warrant, the trial court must determine (1) whether the decision of the issuing magistrate was "affected" by the tainted information, and (2) whether that information prompted law enforcement officials to seek the warrant. *See id.* at 542, 108 S.Ct.

at 2536 (generally describing the necessary two-part analysis); *State v. Jurgens,* 235 Neb. 103, 454 N.W.2d 280, 281–83 (1990) (applying *Murray* to a case involving an unlawful search of the defendant's truck and a subsequent warrant authorizing a search of his farm). In performing this two-step analysis, the trial court may answer the first question by determining whether a sanitized affidavit would establish probable cause, but must conduct a factual inquiry into whether the unlawful search prompted the authorities to seek a warrant. *See United States v. Markling,* 7 F.3d 1309, 1316–18 (7th Cir. 1993) (adopting this approach), *cert. denied,* —— U.S. ——, 115 S.Ct. 1327, 131 L.Ed.2d 206 (1995); *United States v. Restrepo,* 966 F.2d 964, 970–72 (5th Cir.1992) (same); *United States v. Herrold,* 962 F.2d 1131, 1140–43 (3d Cir.) (same), *cert. denied,* 506 U.S. 958, 113 S.Ct. 421, 121 L.Ed.2d 344 (1992). If the trial court fails to undertake the second step, it cannot justify a conclusion regarding the existence of an independent source, and a reviewing court must remand for additional findings. *See Murray,* 487 U.S. at 543–44, 108 S.Ct. at 2536 (remanding for further proceedings because the absence of findings on this issue left the trial court's ultimate conclusion without adequate support); *Markling,* 7 F.3d at 1317 (following *Murray* ); *Restrepo,* 966 F.2d at 973 (same).

### I.

Probable cause determinations involve

a practical, common-sense decision whether, given all the circumstances set forth * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In conducting this inquiry, courts do not examine the "bits and pieces of a probable cause showing in isolation," but must consider the totality of circumstances. *Markling,* 7 F.3d at 1317. When reviewing a determination of probable cause, our function is only to decide whether the issuing court had a substantial basis for its decision. *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332–33 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct.

725, 736, 4 L.Ed.2d 697 (1960)); *State v. Lozar*, 458 N.W.2d 434, 440 (Minn.App.1990) (quoting both *Gates* and Minnesota precedent in a case involving a tainted affidavit), *review denied* (Minn. Sept. 28, 1990).

Lieberg argues that, without the unlawfully obtained photograph of his shoe, the affidavit provides no basis for a probable cause determination because: (1) his criminal history is too stale to be relevant; (2) the affidavit affirmatively misrepresented (a) witnesses' statements regarding the location of Lieberg's car and (b) the victims' relative proximity to Lieberg's home; and (3) the affidavit improperly omitted a letter that might have rebutted the continuity and dangerousness of Lieberg's aberrant behavior.

■ While Lieberg's criminal history cannot, by itself, establish probable cause, it manifests a "rather unique type of sexual deviancy," and the trial court properly considered it as one factor in the totality of relevant circumstances. *Commonwealth v. Gullett*, 459 Pa. 431, 329 A.2d 513, 518 (1974); *see United States v. Conley*, 4 F.3d 1200, 1207 (3d Cir.1993) (explaining the use of prior arrests and convictions is often helpful in establishing probable cause, especially when the present matter involves the same behavior as the earlier activity); *see also United States v. Moody*, 977 F.2d 1425, 1431 (11th Cir.1992) (affirming a determination of probable cause and relying in significant part on (1) motive and (2) the features unique to the bomb under investigation and a device made by the suspect 17 years earlier), *cert. denied*, 507 U.S. 1052, 113 S.Ct. 1948, 123 L.Ed.2d 653 (1993). Lieberg's staleness claim is particularly unavailing in light of his failure to appeal the admission of his criminal history as *Spreigl* evidence. *Cf. Gullett*, 329 A.2d at 517–18 (concluding the defendant's criminal history was properly included in a determination of probable cause, even though its prejudicial nature barred its use as substantive evidence). Thus, the trial court properly included Lieberg's history in its probable cause determination, which must be affirmed if the totality of circumstances provides a substantial basis for the decision. *See Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332–33 (quoting *Jones*, 362 U.S. at 271, 80 S.Ct. at 736, and

prescribing the "substantial basis" test as the appropriate standard of review); *Lozar*, 458 N.W.2d at 440 (quoting *Gates* and Minnesota precedent in a case involving a tainted affidavit).

■ Lieberg does not argue the affidavit's remaining statements fail to provide the additional weight necessary for a common-sense determination that evidence of the burglaries would probably be found at his residence. Instead, he asserts those statements contain knowing or reckless misstatements and omissions, which must also be discarded from the probable cause determination. *See Franks v. Delaware*, 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978) (requiring the suppression of evidence obtained by a warrant if the defendant proves perjury or reckless disregard for the truth in the affidavit's execution and the untainted information does not independently establish probable cause). Lieberg first asserts the information regarding the sighting of his car and the relative proximity of his house to those of the victims contains material misstatements and omissions. However, by failing to raise these issues at the omnibus hearing, Lieberg waived his right to challenge their inclusion in the determination of probable cause. *See State ex rel. Rasmussen v. Tahash*, 272 Minn. 539, 550, 141 N.W.2d 3, 11 (1965) (providing that the failure to make a timely constitutional challenge to the admission of evidence generally operates as a waiver and recognizing an exception only if application of this rule would "perpetuate a substantial and essential injustice in the sense that * * * an innocent [person] may have been convicted"). Furthermore, Lieberg's discussion of these issues is particularly inappropriate because they involve undeveloped questions of fact. *See State v. Brunes*, 373 N.W.2d 381, 386 (Minn.App. 1985) (declining to address the propriety of an unannounced nighttime search because the defendant first raised it after the omnibus hearing and, thus, deprived the state of an opportunity to present evidence), *review denied* (Minn. Oct. 11, 1985); *see also State v. Randa*, 342 N.W.2d 341, 343 (Minn.1984) (treating the issue of falsity or reckless disregard as a question of fact).

Lieberg next asserts the police quoted a 1988 memorandum recounting a statement made by his probation officer, who described Lieberg as an "accident waiting to happen," but knowingly or recklessly failed to disclose a 1992 letter, in which the probation officer recommended that Lieberg be granted increased freedom of movement. At the omnibus hearing, the police officer who applied for the warrant: (1) denied any knowledge of the 1992 letter; (2) testified it was not present in the materials transmitted by Wright County authorities, who had jurisdiction over Lieberg's previous offenses; (3) discussed a recent conversation with the probation officer, who reaffirmed his assessment of Lieberg as a "time bomb"; and (4), after receiving an opportunity to examine the letter, noted that it provides for only a few hours of unsupervised activity and is described as a chance for Lieberg "to prove himself *without jeopardizing the community.*"

 Although the trial court did not decide whether the omission constituted a knowing or reckless misstatement, it was under no obligation to do so. Once a defendant makes a substantial initial showing of perjury or reckless disregard, the trial court must resolve his or her claim only if the allegedly false statement is vital to a finding of probable cause. *See Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676 (requiring a hearing on the issue only if the allegedly false statement is necessary to the establishment of probable cause). Because the trial court determined that other facts independently established probable cause, it was not required to decide the merits of Lieberg's allegation.

 Thus, we are left with the argument that the sanitized affidavit, as considered by the trial court, lacks a substantial basis for the determination of probable cause. However, the affidavit and its attachments establish: (1) Lieberg has an enduring history of identical, and uncommon, criminal behavior; (2) a neighbor observed a car similar to Lieberg's near D.V.'s house on two occasions, first sitting in close proximity to it on the day of a break-in, and later driving towards her house on a dead-end road and returning 15 minutes later; (3) another neighbor saw a car parked outside of N.B.'s house on the day it was burglarized and could not remember its make or color, but described the driver as someone of Lieberg's build; and (4) the burglaries occurred within a few minutes' drive of Lieberg's home. While this evidence might not justify a conviction, it rises above bare suspicion and possesses sufficient weight to meet the low burden required to sustain a probable cause determination on appeal. *See Conley,* 4 F.3d at 1205 n. 2 (quoting Yale Kamisar, *Gates, "Probable Cause," "Good Faith," and Beyond,* 69 Iowa L.Rev. 551, 569–70 (1984), for its discussion of the proper standard of review and its conclusion: *"Not much, is it?"*); *United States v. Plescia,* 773 F.Supp. 1068, 1074 (N.D.Ill.1991) (requiring more than a bare suspicion to support probable cause, but demanding neither evidence that would sustain a conviction nor even a showing that the affiant's belief is more likely true than false), *aff'd,* 48 F.3d 1452 (7th Cir.), *cert. dismissed,* —— U.S. ——, 116 S.Ct. 32, 132 L.Ed.2d 914, *and cert. denied,* —— U.S. ——, ——, ——, 116 S.Ct. 114, 329, 351, 133 L.Ed.2d 66, 230, 247 (1995); *see also Moody,* 977 F.2d at 1431 (finding probable cause based on the suspect's motive for a bombing, his construction of a similar device 17 years ago, and several visits to home supply and hardware stores where he could have purchased the bomb's components).

## II.

 Lieberg further argues the second prong of the *Murray* analysis requires suppression because the unlawfully obtained photograph of his shoe prompted the authorities to seek a warrant. *See* 487 U.S. at 542, 108 S.Ct. at 2536 (recognizing the independent source doctrine would not be available under those circumstances). In support of this claim, Lieberg catalogs their various attempts to obtain a sample of his footprint and notes the police applied for a warrant only upon the success of their third, but unlawful, ploy. Lieberg's failure to raise this particular aspect of the independent source doctrine at the omnibus hearing does not constitute a waiver because a conclusion regarding the existence of an independent source cannot be sustained in the absence of

a factual determination that the unlawful search did not prompt the authorities to seek a warrant. *Id.* at 543, 108 S.Ct. at 2536. However, we cannot accept Lieberg's invitation to decide whether the photograph of Lieberg's footprint caused the authorities to seek a warrant. That is a factual determination, which must receive initial consideration by the trial court. *See id.* at 543–44, 108 S.Ct. at 2536 (remanding to the trial court for initial consideration of this factual issue); *Markling,* 7 F.3d at 1317 (same); *Restrepo,* 966 F.2d at 973 (same). Because the trial court neglected to address this issue, we have no choice but to remand for additional proceedings.

If the trial court determines the police would have sought a warrant even in the absence of the information generated by the unlawful search, Lieberg's conviction will stand. *Markling,* 7 F.3d at 1317. But if it finds that the unlawful search prompted the authorities to seek a warrant, it must suppress the evidence gathered in the search of Lieberg's home and vacate his convictions. *Id.* at 1317–18. Because factual determinations lie within the province of the trial court, we express no view as to the merits of Lieberg's fact-based claim. *Cf. State v. Buchanan,* 431 N.W.2d 542, 551–52 (Minn.1988) (prescribing a "clearly erroneous" standard for appellate review of factual findings made at an omnibus hearing).

## DECISION

First, we affirm the trial court's probable cause determination because it rests on a substantial basis. And second, we remand for additional proceedings, in which the trial court must decide whether the original unlawful seizure prompted the authorities to seek a warrant.

**Affirmed in part and remanded.**