*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1266**

State of Minnesota,
Respondent,

vs.

Willie Ester Waters,
Appellant.

**Filed April 20, 2015
Affirmed in part and remanded
Rodenberg, Judge**

Hennepin County District Court
File No. 27-CR-13-3255

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant
County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Rodenberg, Judge; and

Smith, Judge.

# UNPUBLISHED OPINION

**RODENBERG**, Judge

Appellant Willie Ester Waters challenges the district court's conclusion that a

warrant authorizing the search of his person, vehicle, and residence is supported by

probable cause. He also argues that the district court erred in denying a *Franks* hearing on the question of whether police would have sought the search warrant regardless of police awareness of the results of an earlier illegal search. We affirm in part and remand.

**FACTS**

On January 25, 2013, Minneapolis Police Officer Scott Creighton applied for a warrant to search the person, vehicle, and residence of appellant. The supporting affidavit includes personal observations from a confidential reliable informant (CRI), and Officer Creighton's investigation and personal observations. The affidavit states that "[w]ithin the last 72 hours," Officer Creighton was contacted by a CRI concerning "narcotics dealing" at appellant's residence. The CRI informed Officer Creighton that "a black male seller nicknamed 'Coot' lives at this address and sells and delivers large amounts of powder cocaine and crack cocaine," using a red Chevy Blazer "to pick-up and deliver crack." The affidavit also states that the CRI has assisted the police department with several past drug investigations, resulting in arrests and convictions for narcotics and weapons offenses. The affidavit further states that, during the meeting with Officer Creighton, the CRI positively identified appellant as "Coot" from a photograph. The CRI also told the officer that he was at appellant's residence and "observed the seller with a large amount of crack cocaine packaged for sale."

With this information from the CRI, Officer Creighton investigated further. He determined that "Coot" was appellant's nickname. Appellant's address matched the address given by the CRI, and appellant was the owner of a red Chevy Blazer with the license plate number provided by the CRI. Officer Creighton also surveilled appellant's

house during the daytime and saw a red Chevy Blazer parked in front of the house and viewed "parties enter and leave this address." Officer Creighton retrieved information from a law enforcement data system indicating that a search warrant was executed on appellant at the same residence on April 8, 2010, resulting in the seizure of 81.5 grams of crack cocaine and in appellant's arrest. The evidence, however, was ultimately suppressed by the district court in the earlier case.

A district court judge granted the search warrant and it was executed on January 29, 2013. Appellant was arrested and searched. During the search, officers found $1,362 in cash and a plastic bag containing what was later determined to be cocaine. Officer Creighton and other police officers also searched appellant's residence as authorized by the warrant and found an additional $7,000 in cash hidden in a boot. The state charged appellant with one count of third-degree controlled substance possession in violation of Minn. Stat. § 152.023, subd. 2(a)(1) (2012), later amended to fifth-degree controlled substance possession in violation of Minn. Stat. § 152.025, subd. 2(b)(1) (2012).[1]

Appellant moved the district court to suppress the evidence obtained in the search, or, alternatively, to hold an evidentiary hearing to determine whether omissions in the search warrant were deliberate or were omitted with reckless disregard for the truth. Appellant argued to the district court that the CRI's veracity and basis of knowledge were not adequately established and that Officer Creighton omitted evidence of another search

---

[1] The seized substance was tested by the Bureau of Criminal Apprehension (BCA). The BCA determined the weight to be 2.6 grams, rather than the 3.1 grams originally alleged in the complaint.

warrant that was executed on appellant's residence and person on April 29, 2010. Appellant argued that this search was not mentioned in the January 25 warrant affidavit because only plastic sandwich bags and a digital scale were seized, providing "absolutely no evidence of wrongdoing on [appellant's] part."

The district court denied the suppression motion. Appellant moved for reconsideration, which was also denied. In its order denying appellant's suppression motion, the district court also made several findings related to the CRI, including that the officer-affiant for the April 29, 2010 warrant "relied on tips from the same CRI cited in [the] affidavit for the April 8, 2010 search warrant." Specifically, finding 16 states that, Officer Creighton's affidavit relied on tips from the same CRI cited by both officer-affiants in the April 8 and April 29 warrant affidavits. The state concedes on appeal that this finding is not supported by the record and is clearly erroneous.

Appellant waived his right to a jury trial and agreed to a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 3(a). The district court found appellant guilty and sentenced him to 13 months in prison, the execution of which was stayed for four years on various conditions of probation. This appeal followed.

### D E C I S I O N

Appellant raises three issues on appeal. He first challenges the January 2013 search warrant as not supported by probable cause, because it improperly relied on evidence obtained in a prior illegal search and improperly omitted exculpatory evidence resulting from another earlier search. Second, appellant argues that the district court erred in denying his motion for a hearing to determine whether the omissions in Officer

4

Creighton's warrant application were deliberate or made with reckless disregard for the truth. Third, appellant argues that the district court erred in failing to properly consider whether police would have sought the January 2013 warrant independent of police awareness of the earlier searches. We address each issue in turn.

## I.

Appellant argues that the January 25, 2013 search warrant was issued without probable cause as the supporting affidavit inappropriately refers to an earlier search resulting in illegally seized evidence and omits reference to a second search resulting in exculpatory or innocuous evidence. Appellant also challenges the veracity and basis of knowledge of the CRI.

The United States and Minnesota Constitutions protect citizens from unreasonable searches and seizures and provide that no warrant shall issue without a showing of probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). A search warrant's issuing magistrate should make "a practical, common-sense decision whether, given all the circumstances before him [or her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information," probable cause exists to support the search warrant. *Wiley*, 366 N.W.2d at 268.

"When reviewing a district court's pretrial order on a motion to suppress evidence, 'we review the district court's factual findings under a clearly erroneous standard and the

5

district court's legal determinations de novo.'" *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quoting *State v. Jordan*, 742 N.W.2d 149, 152 (Minn. 2007)). We review whether there is a "substantial basis to conclude that probable cause existed," *State v. Bradford*, 618 N.W.2d 782, 794 (Minn. 2000), and, under the totality of the circumstances, are "careful not to review each component of the affidavit in isolation," *Wiley*, 366 N.W.2d at 268. The "doubtful or marginal cases [will be] largely determined by the preference to be accorded to warrants." *State v. McCloskey*, 453 N.W.2d 700, 704 (Minn. 1990) (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 85 S. Ct. 741, 746 (1965)) (quotation marks omitted).

**Inclusion of April 8, 2010 search results**

Appellant argues, the district court concluded, and state agrees on appeal, that the evidence seized in the April 8, 2010 search may not properly be considered to establish probable cause because that evidence was suppressed in appellant's previous case. *See State v. Krech*, 399 N.W.2d 203, 206 (Minn. App. 1987) (stating that illegally seized evidence cannot "be used to furnish probable cause" for a subsequent search warrant), *aff'd on other grounds*, 403 N.W.2d 634 (Minn. 1987); *see also State v. Hodges*, 287 N.W.2d 413, 416 (Minn. 1979) (providing that "where the court held that if lawfully obtained information establishes probable cause and, by itself and apart from any tainted information, would have justified issuance of the search warrant, the evidence seized pursuant to the warrant is admitted"). The warrant application's reference to the illegally seized drugs on an earlier occasion was improper.

6

But the fact that previously suppressed evidence is referred to in a warrant application does not render the resulting warrant invalid. In *State v. Lieberg*, we identified a two-step test for determining whether an independent source of information supporting probable cause for the search warrant "is genuinely independent" of the tainted information. 553 N.W.2d 51, 55 (Minn. App. 1996); *see also Murray v. United States*, 487 U.S. 533, 542, 108 S. Ct. 2529, 2536 (1988) (stating that "[t]he ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information"). The first step requires the district court to determine "whether the decision of the issuing magistrate was affected by the tainted information." *Lieberg*, 553 N.W.2d at 55 (quotation omitted). The first question in the test may be answered "by determining whether a sanitized affidavit would establish probable cause." *Id.* The second step, addressed in section three, *infra*, concerns whether the earlier unlawful search prompted police to seek the current warrant or whether police would have sought the warrant in the absence of the information generated by the unlawful search. *Id.* at 58.

Here, the sanitized affidavit, excluding all reference to the earlier illegal search, includes the personal observations of the CRI, and Officer Creighton's own investigation and observations. The sanitized affidavit still establishes probable cause supporting the issuance of the search warrant.

When a warrant affidavit relies on an informant's tip, the veracity and basis of knowledge of the informant must be considered by the issuing magistrate. *State v. Souto*, 578 N.W.2d 744, 750 (Minn. 1998). The credibility of an informant is not assumed, and

7

a warrant affidavit must do more than assert that the informant is credible and reliable in a conclusory fashion, *State v. Siegfried*, 274 N.W.2d 113, 114 (Minn. 1978), but providing specific details of the informant's past veracity is not required, *State v. Munson*, 594 N.W.2d 128, 136 (Minn. 1999). Veracity and basis of knowledge are "closely intertwined issues" that are not "separate and independent requirements." *State v. Holiday*, 749 N.W.2d 833, 840 (Minn. App. 2008) (citing *Gates*, 462 U.S. at 230, 103 S. Ct. at 2328)). All facts about the CRI should be used in weighing the CRI's reliability. *Souto*, 578 N.W.2d at 750.

The warrant affidavit provides information regarding the CRI's reliability, veracity, and basis of knowledge. The affidavit states that this CRI has assisted the Minneapolis Police Department in investigations leading to earlier arrests and convictions. And while the district court erroneously found on the record as constituted that this CRI was the same informant used in the April 8, 2010 and April 29, 2010 search warrant affidavits, this finding is unnecessary to a determination of the CRI's reliability because the affidavit states that the CRI had previously assisted in other investigations resulting in arrests and convictions.[2] The CRI's tip included personal observations,

---

[2] Whether those earlier cases actually involved the same CRI included in the application for the January 25, 2013 warrant is not disclosed by the record. The district court also relied on after-the-fact evidence that the search executed in this case resulted in a recovery of cocaine to support its conclusion that the CRI's tips were accurate in this case. This was clear error. We disregard the success of the present warrant in our analysis. *See Byars v. United States*, 273 U.S. 28, 29, 47 S. Ct. 248, 248 (1927) (stating that "a search prosecuted in violation of the Constitution is not made lawful by what it brings to light"); *see also Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 1791 n.10 (1968) (stating that "[a]ny idea that a search can be justified by what it turns up was long ago rejected" by *Byars*).

8

which the district court correctly weighed as the basis of knowledge "in the most preferable form." The CRI positively identified a picture of "Coot" as appellant. Given our deferential standard of review, we conclude that the sanitized affidavit adequately establishes the CRI's reliability.

In addition to the CRI's statements, the affidavit includes Officer Creighton's investigation and his personal observations. He states that he verified that "Coot" was appellant's nickname, that appellant owned the vehicle that the CRI stated was used in delivering crack cocaine, and that appellant's residence was listed as the address that the CRI reported as being used to sell cocaine. Officer Creighton also personally watched appellant's residence, saw appellant's vehicle parked in front of the residence, and saw "parties enter[ing] and leav[ing] this address." This information, analyzed in context of the totality of the circumstances and combined with the CRI's information, provides a substantial basis to conclude that there was a "fair probability that contraband or evidence of a crime will be found" on appellant's person, at his residence, and/or in his vehicle. *Wiley*, 366 N.W.2d at 268 (citation omitted). Therefore, and disregarding the affidavit's reference to the earlier illegal search, the warrant was supported by probable cause.

**Exclusion of April 29, 2010 search results**

Appellant argues that, because the April 29, 2010 search "turned up no drugs," this was material evidence that should have been included in the affidavit supporting the January 25, 2013 warrant request. Appellant argues that, had the April 29, 2010 search and seizure of the digital scale and sandwich bags been included, it would have negated probable cause because it demonstrates that appellant was law-abiding at the time of the

9

April 29, 2010 search. The state argues that the inclusion of this evidence "would not have called into question the instant CRI's information" but instead would have provided the issuing judge with additional evidence of appellant's ongoing participation in narcotics trade.

We conclude that the April 29, 2010 search is benign concerning the existence of probable cause to search on January 29, 2013. It materially supports neither appellant's claim that he was law-abiding nor the state's claim that it tends to prove that appellant was participating in narcotics trade. First, that search was nearly three years before the present warrant. A digital scale and sandwich bags, without more, do not tend to show that appellant was participating in narcotics trade. But neither do they tend to show that appellant was law-abiding, as such items can be associated with drug use or sale. The April 29, 2010 search neither supports nor negates probable cause. Its omission from the January 25, 2013 warrant application was not significant.

**Time-frame of information in warrant application**

Appellant also argues that, because the clause "[w]ithin the last 72 hours" in the warrant application by its terms described only when the CRI met with Officer Creighton and not when the CRI made the observations, the information from the CRI may have been stale. Therefore, appellant argues, the warrant affidavit was insufficient to establish probable cause. The state responds that, because appellant did not raise this issue to the district court, he has waived the argument on appeal.

Appellant's primary argument to the district court in challenging the search warrant was that Officer Creighton's omissions were material and invalidated the search

warrant. The only reference in the motion to "stale" evidence is in appellant's request for a *Franks* hearing, where appellant argues generally that information supporting a search warrant must not be stale or otherwise inadmissible.

Appellant did not argue to the district court that the warrant application referred only to when the CRI *revealed* information and not when the CRI *obtained* that information. This is therefore a new argument on appeal, and we do not address it. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (stating that we "generally will not decide issues which were not raised before the district court, including constitutional questions of criminal procedure").

## II.

Appellant also argues that the district court improperly denied his motion for a *Franks* hearing to determine whether Officer Creighton's omissions were material and made knowingly or with reckless disregard for the truth.

A search warrant "must be voided and the fruits of the search excluded" when police, in procuring a search warrant, knowingly or recklessly disregard the truth by including a material misrepresentation that is necessary to establish probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 2676 (1978). The subject of a search "must show that the officer deliberately made a statement that was false or in reckless disregard of the truth, and that the statement was material to the probable cause determination." *State v. McDonough*, 631 N.W.2d 373, 390 (Minn. 2001). This principle also applies to material omissions. *See State v. Doyle*, 336 N.W.2d 247, 252 (Minn. 1983) (concluding a warrant issued to search two, unconnected apartments lacked

11

probable cause as to one of the apartments because affiant-officers did not inform the magistrate of their doubts as to the information relating to that apartment and the warrant did not otherwise support a search of the same). Innocent or negligent misrepresentations will not invalidate a warrant. *State v. Causey*, 257 N.W.2d 288, 292 (Minn. 1977).

Appellant argues that the district court erred in denying his motion for a *Franks* hearing to determine whether the omissions were deliberate or reckless because the failure of Officer Creighton to include information regarding the April 29, 2010 search was "critical to the informant's veracity in *this particular instance*." Appellant also argues that omitting information concerning the suppression of the April 8, 2010 search also constitutes a material omission. In examining an alleged *Franks* search-warrant-application deficiency, we review the district court's findings for clear error. *State v. Andersen*, 784 N.W.2d 320, 327 (Minn. 2010). We review de novo whether the alleged omissions were material to the probable cause determination. *Id.*

Appellant seems to argue that the information pertaining to the cocaine seized in the earlier search should be excluded but the fact that a search ended in suppression of the seized evidence should be included. This argument is not supported by any legal authority. The April 8, 2010 search was properly excluded by the district court in considering whether the January 25, 2013 warrant was supported by probable cause. The district court also correctly determined that the omission of the April 29, 2010 search was "immaterial."

Because the district court properly excluded the fruits of the April 8, 2010 illegal search and because the April 29, 2010 search was not material, the district court did not

err in concluding that the second prong of the *Franks* test was unnecessary. *See McDonough*, 631 N.W.2d at 391; *see also Lieberg*, 553 N.W.2d at 57 (stating "the trial court must resolve [a] claim only if the allegedly false statement is vital to a finding of probable cause"). The district court did not err in denying the request for a *Franks* hearing.

## III.

Appellant argues that the district court did not properly apply the two-step *Lieberg* test to determine whether the state would have sought the January 25, 2013 warrant even without the improperly seized evidence of April 8, 2010. He argues that this case must be remanded for additional fact-finding.

Where a search warrant is supported by illegally seized evidence, suppression of resulting evidence is not required when an independent source of information "existed and was known" before the search commenced. *Hodges*, 287 N.W.2d at 415-16. As previously discussed, there is a two-step test for determining whether the allegedly independent source of information supporting probable cause for the search warrant "is genuinely independent" of the tainted information. *Lieberg*, 553 N.W.2d at 55. The first step requires a determination of whether the issuing magistrate's decision was affected by the improper information. *Id.* The second step requires the district court to "conduct a factual inquiry into whether the unlawful search prompted the authorities to seek a warrant." *Id.* We stated in *Lieberg* that, if the district court "fails to undertake the second step, it cannot justify a conclusion regarding the existence of an independent source, and a reviewing court must remand for additional findings." *Id.*

13

The state concedes that the district court did not make the required factual findings concerning whether police would have been prompted to seek the January 25, 2013 warrant without the evidence of the April 8, 2010 search in which 81.5 grams of crack cocaine was recovered. Our thorough review of the district court's findings does not reveal that the district court found or considered whether the police would have sought the January 25, 2013 warrant without the evidence of the April 8, 2010 search. We are obligated by our holding in *Lieberg* to remand to the district court to conduct additional fact-finding. We remand to the district court with the following instructions:

> If the [district] court determines [that] the police would have sought a warrant even in the absence of the information generated by the [April 8, 2010] search, [appellant's] conviction will stand. But if it finds that the [April 8, 2010] search prompted the authorities to seek a warrant, it must suppress the evidence gathered in the search of [appellant's person, home, and vehicle] and vacate his convictions. Because factual determinations lie within the province of the [district] court, we express no view as to the merits of [appellant's] fact-based claim.

*Lieberg*, 553 N.W.2d at 58 (citations omitted).

**Affirmed in part and remanded.**

14